**Rosemary PYE, Regional Director of the First Region of the National Labor Relations Board, for and on behalf of the National Labor Relations Board, Petitioner**

v.

**YOUNG WOMEN'S CHRISTIAN ASSOCIATION OF WESTERN MASSACHUSETTS, Respondent**

No. C.A.05–30264 MAP.

United States District Court, D. Massachusetts.

March 10, 2006.

Ronald S. Cohen, National Labor Relations Board (U.S. Gov), Gene M. Switzer, National Labor Relations Board, Boston, MA, for Rosemary Pye, Petitioner.

Jay M. Presser, Skoler, Abbott & Presser, Springfield, MA, for Young Women's Christian Association of Western Massachusetts, Respondent.

Shelley B. Kroll, Segal, Roitman & Coleman, Boston, MA, for United Auto Workers Local 2322, Amicus.

## MEMORANDUM AND ORDER REGARDING PETITIONER'S MOTION TO REVISIT COURT'S ORDER DENYING PETITION FOR INJUNCTION (Dkt. No. 19)

PONSOR, District Judge.

Petitioner has brought this action pursuant to § 10j of the National Labor Relations Act, 29 U.S.C. § 160(j) (2006), seeking injunctive relief pending final disposition of matters now before National Labor Relations Board ("NLRB" or "Board"). The court heard argument on the petition on January 9, 2006. On February 13, 2006, the court denied the petition on the ground that injunctive relief was not "just and proper." *See Asseo v.*

Centro Medico Del Turabo, 900 F.2d 445, 450 (1st Cir.1990).

The court's ruling was issued with two caveats. First, the court emphasized that the issue was very close and was based primarily on Petitioner's inability to make a strong showing of the eventual likelihood of success on the merits of its underlying claim. Second, at the time the court issued its ruling, a complaint was pending before an Administrative Law Judge ("ALJ"), charging that Respondent had violated Sections 8(a)(5) and (1) of the National Labor Relations Act (the "Act"). 29 U.S.C. § 158(a)(5), (1). This court's decision denying relief specifically indicated that the ruling was "without prejudice and may be revisited after the ALJ issues a decision." *Pye ex rel. NLRB v. Young Women's Christian Ass'n,* 414 F.Supp.2d 96, 100 (D.Mass.2006).[1]

At the time of this court's ruling on February 13, 2006, neither the court nor the parties was aware that on February 10, 2006, the ALJ had issued a lengthy ruling finding that Respondent had violated the Act in several ways. Petitioner received the ALJ's memorandum on February 14, 2006, and filed this Motion to Revisit on February 17, 2006.

Having now had the opportunity to review carefully the ALJ's thorough and closely-reasoned memorandum, the court will allow the Motion to Revisit and, upon reconsideration, will allow Petitioner's Motion for Injunctive relief.

■ It is rare for this court to allow motions to reconsider. However, in this instance the thoroughness and careful reasoning of the ALJ's memorandum has prompted the court to take a closer look at the question of whether Petitioner is likely to succeed on its claim that Respondent

---

**1.** The court will not repeat here the facts and law summarized in the earlier memorandum; the contents of the February 13, 2006, ruling are incorporated in this memorandum.

has committed an unfair labor practice by failing to execute an oral agreement with, and to recognize, Local 2322 (the "Union"). As the Court of Appeals has repeatedly held, the responsibility of the District Court in a § 10(j) proceeding is not to decide the merits of the underlying unfair practice claim; rather, the court is to decide, first, whether there is "reasonable cause" to believe that a violation of the Act has occurred and second, whether injunctive relief is "just and proper." *See, e.g., Pye ex. rel. NLRB v. Sullivan Bros. Printers, Inc.,* 38 F.3d 58, 63 (1st Cir.1994); *Centro Medico,* 900 F.2d at 450.

The ALJ concluded that the Respondent's refusal to execute the parties' oral agreement and its unilateral withdrawal of recognition of the union constituted a "clear" violation of the Act. (*See* Dkt. No. 19, ALJ Order, slip op. 7.) The court, on reconsideration, and after review of the authorities cited in the ALJ's memorandum, must agree that Petitioner's position on this issue is strong. The agreement between the Union and Respondent came into being, albeit orally, on or about April 20, 2005 at a time when the Union indisputably had the support of a majority of the workers. The apparent subsequent loss of majority support for the Union did not justify Respondent's later refusal to honor the terms of the agreement into which it had entered. The ALJ's memorandum bolsters this conclusion solidly. *See Rivera–Vega v. ConAgra, Inc.,* 70 F.3d 153, 161 (1st Cir.1995) (finding that an ALJ's conclusion that violations occurred "confirmed" the court's own independent review of the record); *see also Bloedorn v. Francisco Foods, Inc.,* 276 F.3d 270, 288 (7th Cir.2001) ("Having presided over the merits hearing, the ALJ's factual and legal determinations supply a useful benchmark against which the Director's prospects of success may be weighed.").

The distinction between an employer's good faith doubt about a union's majority status and objective evidence of actual loss of majority status, emphasized so strongly by Respondent, constitutes a resourceful effort by counsel to distinguish *Auciello Iron Works, Inc. v. NLRB,* 517 U.S. 781, 116 S.Ct. 1754, 135 L.Ed.2d 64 (1996). This argument does little, however, to undermine the well-established principle that a firm agreement, which the oral understanding between the Union and Respondent indisputably constituted, generally cannot be rejected based on developments occurring later. To repeat, on further consideration the court must conclude that Petitioner has made the strong showing of likelihood on the merits required by the circumstances of this case.

A re-examination of the issues of irreparable harm and balance of harm reveals that Petitioner's showing on these factors is convincing as well. As the memorandum submitted by the *amicus curiae,* United Auto Workers Local 2332 demonstrates, the risk of erosion of support for the Union is substantial and outweighs any potential harm to the employer. (*See* Dkt. No. 21, Mem. Amicus Curiae United Auto Workers Local 2322.) In a case affirming a grant of injunctive relief for the NLRB, the First Circuit concluded that

> there was a very real danger that if [the employer] continued to withhold recognition from the Union, employee support would erode to such an extent that the Union could no longer represent those employees. At that point, any final remedy which the Board could impose would be ineffective.

*Centro Medico,* 900 F.2d at 454; *see also NLRB v. Electro–Voice, Inc.,* 83 F.3d 1559, 1573 (7th Cir.1996) ("As time passes, the benefits of unionization are lost and the spark to organize is extinguished. The deprivation to employees from the delay in

bargaining and the diminution of union support is immeasurable. That loss, combined with the likelihood that the Board's ability to rectify the harm is diminishing with time, equals a sufficient demonstration of irreparable harm to the collective bargaining process." (citation omitted)); *Kinney v. Cook County School Bus, Inc.,* No. 00 C 2042, 2000 WL 748121, at *9 (N.D.Ill. June 1, 2000) ("There is the danger that the company will be able to reap the benefits of allegedly illegal conduct even if it eventually loses on the merits before the NLRB."). The present case falls in line with these authorities.

In sum, the court's independent reconsideration of three of the four criteria supporting issuance of preliminary relief has convinced it that the Petitioner has made a strong case.[2] For this reason, Petitioner's Motion to Revisit the court's prior ruling (Dkt. No. 19) is hereby ALLOWED, and the Petition for Injunctive Relief pursuant to § 10(j) is, upon reconsideration, ALLOWED.

Respondent is hereby ordered as follows:

(1) Respondent will recognize, and upon request, bargain in good faith with, the Union as the exclusive collective bargaining representative of the employees in the collective bargaining unit described in the Petition at 16.

(2) Respondent will abide by and comply with all the terms and conditions of employment set forth in the collective bargaining agreement that Respondent is alleged to have entered into with the Union on or about April 20, 2005.

(3) Respondent will post copies of this order at Respondent's facilities located in Hampden and Hampshire Counties, Massachusetts, where notices to employees are customarily placed; the posting shall be maintained during the pendency of the Board proceeding, free from all obstructions and defacements; all employees shall have free and unrestricted access to such notices, and agents of the Regional Director of Region 01 of the Board shall have reasonable access to Respondent's Massachusetts facilities in Hampden and Hampshire Counties to monitor compliance with this posting requirement.

(4) Within twenty days of the issuance of this order, Respondent shall serve upon the court and the Regional Director of Region 01 a sworn affidavit from a responsible official of Respondent, describing with specificity the manner in which Respondent has complied with the terms of this decree.

It is So Ordered.

---

**2.** As noted in the court's prior memo, analysis of the fourth criterion, public policy, reveals considerations favoring both sides about equally and is therefore not determinative.